Please be seated. Good morning all. We have, as you know, four cases for oral argument this morning. We'll take them in order. We might, we will take a break and it might be after either number two or number three, probably number two for those arguing three, but just be flexible either way. Sitting with me today is Judge McHugh from Utah, Judge Morris from Utah. This is our first term in court for the new year. So let's get started. I don't think we have any opening motions. Let's get started with the first case, which is 22-1194 Godinez v. Williams. And Mr. Rapucci, you may proceed. Thank you very much. May it please the court. My name is Jonathan Rapucci. I appear on behalf of Omar Godinez, who is the applicant appellant in this case. Despite the complexity of the issue presented here, it boils down to a more straightforward question. Whether, as written, section 18.1.3-1006A1 of Colorado's Sex Offender Lifetime Supervision Act affords Mr. Godinez a realistic and meaningful opportunity for release based on demonstrated maturity and rehabilitation. And quite simply, the answer is no, because the controlling statutory language plainly and unambiguously requires the state parole board to take Mr. Godinez as it finds him and to assess his parole eligibility exactly the same way as it would any adult offender. Why shouldn't we defer to the state court statutory interpretation under the Bradshaw case that's discussed in the briefs? The court should not defer to that finding, the court's conclusion in that case, for a couple of reasons. First, that conclusion by the state trial court would not be binding in any other case. It wouldn't be binding on any other litigant. But it's binding on your client. Well, Bradshaw is not an inexorable demand. It's not an ironclad rule. And this court has equitable authority. Where do you get that proposition? Well, I get that proposition. I believe it's McQuiggan, maybe, the case. But Bradshaw, it does talk about how there's exceptions when the state is, you know, purposely evading review. And in this case, I think that the court has to consider that whether or not it was purposeful, the harm is exactly the same to Mr. Godinez. The state did evade the Eighth Amendment question in this case. The trial court's decision is not the last reasoned decision. The Colorado Supreme Court, the Court of Appeals, didn't really address the merits. It deferred to the Colorado Supreme Court on cases that have now been shown to be clearly contrary, contrary to clearly established law. I mean, but in a sense, you have the relief you want. And, you know, we're sitting across the state-federal divide. Why would we reach out and, you know, tell the state trial court that its statutory interpretation Colorado laws is inoperable over here in federal court? Well, the state trial court didn't give the relief that Mr. Godinez was seeking. It denied his Graham claim. And it did it on a hope and a prayer approach and a presumption that the parole board would construe the operative statute here as allowing it to consider the Graham factors and to also consider the general parole eligibility criteria that are set forth in a separate statute. It's my position that clearly were this court to apply statutory interpretation principles from Colorado, it couldn't get to that result. And the People v. Manoir case is really lays out very clearly how the state courts should apply, should interpret SILSA. And that newer precedent was not available to the trial court, you know, seven years before that. That leads me to my next question. Why are we here? Mr. Godinez isn't going to be parole eligible for another decade or so. He's going to go to the parole board, presumably at that point. And then, you know, the state of Colorado hopefully will advise the parole board to the constitution. And if he doesn't get the relief that he thinks he should, then he can challenge the parole board at that time. I don't see how this case could be ripe given the twists in the road between now and his parole hearing. Well, respectfully, I would disagree with your honor. And I can tell you why the case is ripe. And I laid it out as clearly as I can in my reply brief. But here, you know, to say that it's not ripe would leave Mr. Godinez in a Kafkaesque catch-22. He had to bring his federal habeas claims when he did in order to avoid a time bar. Now that he did that, he would be barred in the future from raising them. Also, he's challenging the duration of his confinement, not the execution of the sentence. And so you have to be clear. Mr. Godinez is serving a life sentence with only a possibility of parole. That's not contingent upon what happens, you know, when he turns 40 many years from now. Well, it seems that he could successfully bring a second or successive habeas down the road because if he goes before the parole board and the parole board his case that precludes the one year at the statute of limitations and off you go. In preparing for this oral argument, I did come across a case that I did provide before today's hearing to my adversary, Cole versus Everett, 504 F Appendix 758. And that case, very clearly from this court, says that a challenge to It can't be raised under 1983. It can't be raised under 2241. And so, you know, and as I also pointed out in my reply brief, the only way to get around a successive habeas would be for him to have not raised it in the first place. It would have to be a new claim. Now, if the court were somehow able to hold this... the ground factors. Right, but his claim is not contingent upon that fact. His claim is contingent upon application of the statute as it's written. Well, talking about this SILSA as it's written, one of the factors the parole board is supposed to consider is the likelihood that they're going to re-offend, right? How is that a debilitation question that the Miller line of cases has the court look at for purposes of the juvenile? Right. Well, I think the best illustration of how it's different, a couple of things. One, it's a mandatory statute. It's got two factors that the court has to consider. It doesn't leave any room for consideration of other factors. It doesn't say, and you can't consider anything else. It says you must comply with these factors, but it doesn't go on from that. Correct, but I think the best illustration of how it doesn't comply, and we have to presume that the parole board will follow that statute as written. That's an established presumption. I think the best illustration is what's taken place in two other contexts in Colorado. The J-CAP program, the juveniles convicted as adults. In that particular program, which applies to every other juvenile other than a juvenile sex offender, juvenile sex offenders have been left behind. That program expressly lists factors that consider, expressly consider rehabilitation, expressly consider... My point is, doesn't this one expressly consider rehabilitation? Because you have to, as part of SULCEP, you have to consider whether they're likely to re-offend. It's the same thing of, is the guy rehabilitated or not? Well, respectfully, I disagree. There may be room for that analysis. However, it's not written, so what's left is a hope and a prayer approach. I mean, basically, Mr. Executive will follow something other than the compulsory statute that controls. Also, in response to Miller with homicide defendants, Colorado has enacted a sentencing statute, a statute that specifically requires trial courts to consider factors that mimic those in Roper and Graham. And so, here it's been left out. Sex offenders have been left behind. In Graham, Montgomery, the Supreme Court was very clear that it's for, in the first instance, for the states to explore the mechanisms and to adopt mechanisms to deal with the Graham rule. Colorado hasn't done that. And it's 13 years later. And so, when the state hasn't brought itself into compliance with the Eighth Amendment, that's the substantial issue presented here. And I still feel like you haven't answered my question, which is, if you look at the requirements of SILSA itself, that in determining whether to release the sex offender on parole, the parole board shall determine whether the sex offender has successfully progressed in treatment and would not pose an undue threat to the community. The second part of that is the same thing as whether they've been rehabilitated, isn't it? You know, one of your Graham considerations is baked into SILSA. Well, that's not what SILSA says. That's an interpretation of plain language that is not there. Godinez is being treated as an issue that doesn't consider his maturity. I mean, in the sense that, I mean, it's maturity and rehabilitation, you know. And I see Judge McHugh's point about perhaps one aspect of the statute does perhaps incorporate rehabilitation using other terms, but what about maturity? Well, again, you know, I don't know what standards apply. And that's why I've asked this Court to grant a certification order, because this is a very important question. It could affect a lot of people in Colorado, not just juveniles. I know that I didn't raise that in the district court. That's on me. That's not on Mr. Godinez. I can't, that was an oversight on my part. But this Court does have the authority and could really simplify and get to a reliable determination of eighth amendment claim. And I know the Court has more questions, but I'd really like to reserve the last two minutes of it. I'll give you some time. The Colorado Supreme Court hasn't overruled Lucero, have they? No, they have not. So that's still in place in Colorado. It is. It is. That's still at the top of this. That's exactly right, Your Honor. And Estrada Huerta as well. So Colorado has turned a blind eye to what this Court has said in butter and rainer. Don't have they had a chance to reconsider it? I don't know for certain, Your Honor. Can't really say they've turned a blind eye. You know, I asked them to grant cert in this case, and they didn't. You know, this issue could have been resolved. Who didn't? Excuse me? Who didn't grant cert? The Colorado Supreme Court did not grant certiorari in this case, and I did present them with the Graham claim. Can you articulate for me, as clearly as you can, what remedy you ask this Court to adopt? Yes, Your Honor. I think I can. You know, what I would like this Court to do is to reach a holding that the sole sense written and applied to a juvenile non-homicide defender runs afoul of Graham. I think the appropriate remedy would be to grant a conditional writ, allow the state courts reasonable time to address this. I think it would be a writ for resentencing in the state courts. Obviously, there would be litigation that needs to take place there. But I think that would be, that would give the state the opportunity to really explore the mechanisms that would comply with Graham. How could you get a resentence that would address your constitutional claim? You're still stuck with the statute and the parole board. Well, I don't see how the state trial court judge on resentencing can get around that. What could he do? Well, I think what they would need to do is similar to what was done in the Michael Tate case with regard to homicides, and they'd have to kind of go back and look at what the legislature most likely would have done. And frankly, obviously, that'll be a difficult task for the trial court. But were this court to make the findings, to conclude that this is an Eighth Amendment problem, then I think that very quickly Colorado's legislature would, or perhaps the executive, Governor Polis, somebody would have to put some standards in place. And they could apply retroactively, which would then give Mr. Gordinas something more than the hope and the prayer that he has now, which really is not enough to satisfy the Eighth Amendment. One last question. I'm not clear on the specifics, but doesn't Colorado have basically a state habeas equivalent, a way to collaterally attack an illegal sentence? Could you go back to state court and file your constitutional claim in that form? And thereby exhaust your options through the Colorado appellate courts? Well, you know, I think I'm very familiar with the law. I think what would frankly happen, Your Honor, is that this is a constitutional claim. It would have to be addressed under Rule 35C, not Rule 35A. Despite the High Court's recognition in Montgomery that this was an illegal sentence, what Colorado has interpreted in a legal sentence as something different, something that's not authorized by statute. And so I think the short answer, if I were to go back, try to bring a 35C claim, raise the Graham claim, they would say it's excessive because the Graham claim was raised on direct appeal here. And so frankly, I think it's futile. I'd love to try, but I think it's futile. And actually, Your Honor, I would also be remiss if I didn't point out that the statute of limitations would have run, that's a three-year, would require a three-year statute of limitations. And so it would also be untimely. And frankly, I think it's unnecessary because the claim was fully exhausted at the appellate level. Thank you. That was helpful. Thank you, Your Honor. All right. Let's hear from Colorado. Mr. Lee. Thank you, and may it please the Court. John Lee on behalf of the Appellees. Let me start with that last question, and I'll move back to kind of how I'm hoping my argument will go. In Colorado, there is a provision, 35A, which allows for a challenge to an illegal sentence. That could be raised at any time. Unlike Colorado's 35C rule, 35A cases do not have a successive bar. Returning to kind of just – So you – the state believes that Mr. Gómez has a remedy in a state habeas – or has a forum. Let me put it that way. I don't know if he's going to win or not, but he has a state avenue to get the statute interpreted by the state courts. Yeah. In theory, he could – there is a cognizable 35A claim. But I think more fundamentally, and I think some of this Court's questions have gotten to, what's interesting about this case is both the state and the federal district court found that Mr. Gómez – Colorado law will allow Mr. Gómez to get the same considerations that he's effectively asking for. He's just saying that both courts got it wrong. This Court should affirm for four independent reasons. The federal district court relied on the trial court, gave deference to the state trial court rather than to, you know, the last – rather than – it had already rejected, obviously, the last reasoned decision of the Colorado Court of Appeals. So I'm not sure why the trial court matters here. Why it wasn't entitled to deference, was it? The state trial court's determination? No. Or the federal district court, I'm sorry. The state trial court's decision was not the last reasoned decision, and therefore was not entitled to deference by the federal district court, but it nevertheless gave it deference rather than reviewing it de novo. The Court of Appeals – So I shouldn't consider any of that when we're looking at it de novo, I guess. It was the last state court determination on this issue that's currently raised. Our reading of the cases those courts already discussed, Ritchie, McGuire, both provide that state court interpretations are binding on a habeas court. Why would – do you think it was the last reasoned decision? On the square issue that's presented to this court. The Court of Appeals – What authority are you relying on? Because, I mean, the Colorado Court of Appeals certainly thought it was addressing the issue that was presented. It just addressed it in a different way with a case that was recent and had just come out. I guess I'd say if we disagree with you that the state trial court wasn't entitled to any deference, how does that impact the argument? It wouldn't change the result. I think based on the other three grounds this court can affirm beyond just deferring to the state courts or patient state law. The second and third reasons are that the district court and the two statutes, SILSA and the general parole statute, do work together. The third reason is – How do they work together? It seems to me that they pretty clearly said – say that SILSA stands alone in its application. So, Kodata's argument is largely built on dictum from the Manoir Carl Springport case where the Colorado Supreme Court in dictum said that the case stands alone. One, that case did not address this issue before the court. Two, it's dictum. And three, it's overbroad dictum that the court in Manoir even recognized. This court looks at paragraphs 44, 47, and 63 in the Manoir case. The court recognizes that although it's using this language like it's its own statute, it beats its own drum, it recognizes that SILSA does incorporate expressly and implicitly the general sentencing statutes. Where does it do it expressly? I mean, I'm reading the parole board shall grant parole or refuse to grant parole, fix the conditions thereof and set the duration of the term of parole granted pursuant to the provisions of SILSA. Where in that does it expressly say end all the other general parole considerations? So, two responses. Our first one is it doesn't expressly, I acknowledge that. We argued it implicitly does because it says... Okay, I thought you just said expressly and implicitly. I was talking about Manoirs, talking generally about the statute as a whole, not this specific provision. Again, Manoir did not address these provisions at all. I was just trying to distinguish even the dictum used in Manoir that's being relied on. Again, even Manoir itself says that that dictum is overstated. But to return to the question, our argument is implicitly the statute does incorporate it. It says determine, as we pointed out in our brief, in other statutes, Colorado used shall only determine, may only consider. That word choice suggests that it's not meant to be exclusive. The closest... It's found in 1722.5-403 where they say that for any sex offender sentenced under SILSA, the parole board shall determine, shall determine whether or not to grant parole as provided in 18.1.3.1006. I don't know how you say that incorporates anything other than what's in SILSA. That's you shall sentence them under that statute. Or you shall consider parole under that statute. As the other arguments we pointed out in the brief, even if this court were inclined to think that the language itself suggested that it was meant to be exclusive, again, there's other Kansas statute of construction that strongly suggests the opposite. Wouldn't this be a good question for the Colorado Supreme Court, especially since they still have Lucero on the books, to let them kind of work this out, see where they come out on their own law? I would say it's unnecessary in this case because, one, I do think that if we go to the other canons, there is a clear answer. But two is I think this court's other questions kind of revealed, even if SILSA is by itself the only considerations the parole board can consider, it needs grant. Where's the maturity aspect in SILSA? I mean, I pointed out where I think the rehabilitation is handled, but where do you get the maturity? Which means, you know, when they committed the crime, they weren't fully formed in their frontal lobe. And where do you see that in SILSA? So, and this will kind of return to the statutory argument. In the general parole statute, and I do think for one of the provisions, it is considered in SILSA, and if this court looks at, I believe it's page 368 of the record of the parole statutes, it does say that in deciding whether to release a sex offender to parole, the parole board is supposed to consider the risk assessment form, which is outlined in 1722.54044B, I believe. And if this court were to look at the risk assessment form, I believe that does include consideration of the offender's age at the time they committed the crime. So that would be one possible place where it could be considered. Are you saying there's some place where it expressly indicates you should consider the age of the offender at the time the crime was committed? My understanding is that the court has to, or the parole board is supposed to consider the risk assessment, and the risk assessment would require consideration, or you get points based on the age you are as, that the person committed the crime. Assuming that this court does not agree with that. Well, how does age at the time you committed the crime equate with maturity at the time you're considering parole? Isn't that kind of exactly the opposite? You need to consider, have they gained in maturity? Where are they now? As opposed to where they were when they were a child. I think that's the report. Just saying, well, they committed this at age 15 certainly doesn't pull in that whole maturity factor, which is so important to claim. I think that's baked into progress in sex offender treatment. Necessarily, some of those goals, as outlined in the brief, focus on an offender's willingness to discuss the issues that cause them to commit the offense, a willingness to work to prevent those factors from impacting how they live, depending on how they score and they progress through treatment. It could also include other factors, such as whether or not they've shown a commitment to living a healthy, well-balanced lifestyle. I think those factors and what you have to show in order to progress in sex offender treatment do incorporate allowing an offender to show demonstrated maturity and rehabilitation. This is probably a question outside the record, but has the parole board been confronted yet with a juvenile that fits the profile of the defendant here? Not to my knowledge. Has the Attorney General's Office given any guidance to the parole board on how to handle the Graham factors for future cases? Not to my knowledge. There is the one letter that defense counsel cites to in or appellant's counsel cites to in their brief, which includes a memo from the Attorney General's Office that sex offender treatment, you have to have progress in sex offender treatment in order to be released, but I don't remember that memo having any citation as to the AG's office having submitted an opinion as to Graham's application. Do you think this case is right for this court to adjudicate it? I do not. It depends on multiple layers of speculation. As this court pointed out, it could be pursued. Why speculation? What they're challenging is a sentence that they say is unconstitutional today, not in the future, but today, under what Graham requires, that Salsa doesn't provide. That sentence is unconstitutional today. So our position is the State District Court said that those will be considered, that in his case, when he goes before the parole board, the parole board has to consider the totality of the factors, which I think O'Donoghue has conceded would include Graham's mandate. And that's the State District Court that if we don't give deference to, if it's not, we don't. Is that what you're saying? But in terms of ripeness, the parole board would have to give deference to the State Court's order. In response to that, the publicist. It seems to me there's two parts to this ripeness question. One is his argument that the programs are underfunded and I'm not going to be able to get treatment and blah, blah. That, to me, is not right. But when he says that your statutory scheme is unconstitutional and I was sentenced under an unconstitutional sentencing scheme today, it is unconstitutional and I can today challenge whether it is unconstitutional as a matter of law. And your argument is, well, when you address that question, you defer to the State Court and it's not constitutional. That doesn't answer whether it's right. It says I win even if it is right. So on the ripeness question, I think Judge Moritz has made a good point that today his challenge is my sentence is unconstitutional. I would reframe it as his argument is today is unconstitutional because he doesn't think the court or the full court in the future will consider, should he demonstrate maturity and rehabilitation, whether they will release him. Because the statutes today don't require them to. That's correct. But again, we do have a State District Court order that would apply in his case that says the statutes will require him to. And even if the one response that Godinez issued in the reply brief was citing to that 1980 Supreme Court case, discussing the Colorado court's authority over the parole board, and it says while a parole board decision, a Colorado court can generally not review a parole board's decision. It can when the parole board does not follow the statute. So because the State District Court, and I do think that would be binding on the State's parole board, has said that these statutory factors will be considered, the Grants Mandate will be considered when he, should he demonstrate maturity and rehabilitation, it's not right about this juncture, and he would have other avenues for relief. I'm not so sure that the parole board has to defer to the State court interpretation. I think it probably has the ability to make its independent legal judgment based on the advice from your office on what the statute says. I'm not sure there's a guarantee that the judge, this judge interpretation is going to hold 10 years from now. I think under law of the case, it would, as it applies to Mr. Godinez. And again, under the one case that Mr. Godinez cited, that 1980 Colorado Supreme Court case, parole boards are required to review what Colorado courts say they have to do under the parole board statute. And as this is such a consideration, it would have to be considered. I mean, it seems to me that the legal argument here wins or loses on whether the State trial court got it right on the interpretation of the statute. Doesn't that beg for us to certify this to the Colorado Supreme Court for them to interpret their own statute? Our argument is that because there's no question that it does cover it, this court doesn't need to. I mean, but certainly this court could. All right, counsel. Thank you. And could you allow two minutes and 30 seconds for Mr. Rapucci? If you want. Yes. Thank you, Your Honor. I appreciate that. And I do appreciate Mr. Lee's concession that Mr. Godinez would be able to have a, at least in theory, an avenue of relief under 35A. However, the truth of the matter is 35A is the equivalent of a jurisdictional thing. Parties can't create jurisdiction. And so that concession isn't enforceable. And candidly, while appreciated, it's meaningless. It would have no effect under 35A in Colorado. With regard to the idea that Manoa is just purely dicta, Manoa does not have a holding that expressly decides the issues in this case. But to write off the entire most recent and one of the only very detailed explanation of how Colorado interprets SOSA as a matter of statutory interpretation, I don't think it can be so easily dismissed as dicta. I do, along with JCAP, the JCAP program, and I don't have that site in front of me, but I would refer the court also to another Colorado statute that's 18-1.3-401C, Roman numeral 1B. And that's the statute that I tried to refer to earlier. I think it doesn't actually refer to homicide, juvenile offenders, but it refers to juvenile offenders who were convicted of Class I felonies who weren't homicide offenders. The only Class I I can think of is first-degree kidnapping. But for that very small group, I think, of offenders, that statute explicitly requires consideration of the factors that are set forth in Roper and Graham. And so that does show that Colorado knows what it needs to do. It's just that when it comes to sex offenders, politically, it hasn't been able to get done. And so obviously the trial court can't write the statutes. This court can't write the statutes. But a solid holding that the statutes as they're written currently run afoul of the 18th Amendment certainly would force the state to act. I see my time is up. Appreciate your arguments.